FILED ___ ENTERED
___ LOGGED ___ RECEIVED

MAR 11 2020

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Automated teller machines ("ATMs") were electronic devices typically owned and operated by financial institutions, such as Capital One Bank and BB&T Bank. Banking customers used ATMs to conduct banking transactions, including withdrawing money from individual bank accounts. A standard ATM required the customer to insert into a provided slot a unique credit or debit card (hereinafter, "ATM card") with a magnetic strip that stored data about the customer's bank account, including the customer's means of identification.

As a security measure, after a customer inserted an ATM card into an ATM, the ATM then required the customer to type a unique personal identification number ("PIN") onto a provided keypad. Once the customer entered the correct PIN, the ATM provided the customer with certain access to the customer's bank account, which included the ability to withdraw a specific amount of funds from a customer account in the form of United States currency. Many ATMs were connected to interbank networks, which enabled a banking customer to withdraw money from an account using an ATM owned and operated by a financial institution other than the financial institution that held the account.

ATM skimming devices ("ATM Skimmers") were devices that surreptitiously recorded account information and other means of identification from ATM cards after the customer inserted the ATM card into the provided slot. An ATM Skimmer was typically installed on, and sometimes over, a genuine card reader in such a way as to avoid detection by ATM customers. An ATM Skimmer often was used in conjunction with a camera either contained within the device or in a separate device. The camera, focused on the keypad of the ATM, captured an ATM customer's PIN when manually entered by the ATM customer. Once the ATM Skimmer was removed from the ATM, account information recorded from ATM cards by the ATM Skimmer could be downloaded and matched with corresponding PINs captured by the camera.

An encoding device, or encoder, was a device capable of reading and writing information on the magnetic strips of ATM cards. An encoder could be used to create a counterfeit or unauthorized ATM card by transferring a genuine card's account information to another card with a magnetic strip, including a gift card, in a process known as "re-encoding."

The re-encoded ATM cards then could be used with the corresponding PIN at an ATM to fraudulently withdraw funds from a customer's bank account. The re-encoded cards were "counterfeit access devices," as defined in 18 U.S.C. § 1029(e)(2). ATM Skimmers and encoders were device-making equipment, as defined in 18 U.S.C. § 1029(e)(6).

From in or about October 2016 through in or about September 2017, in the District of Maryland and elsewhere, the Defendant, **CRISTIAN POENARU** ("**POENARU**"), did knowingly and willfully conspire with others to commit offenses under 18 U.S.C. § 1029(a), namely, to knowingly and with intent to defraud, in a manner in and affecting interstate commerce, (a) produce, use, or traffic in one or more counterfeit access devices, and (b) produce, traffic in, have control and custody of, or possess device-making equipment.

As part of the conspiracy, **POENARU** and his co-conspirators affixed ATM Skimmers to ATMs in order to capture bank customer debit and credit card account numbers. **POENARU** and his co-conspirators also affixed cameras to, or proximate to, ATMs in order to capture bank customer PIN numbers. **POENARU**'s co-conspirators then encoded the magnetic strips of other plastic cards with the compromised account numbers in order to create counterfeit access devices.

For example, on or about October 1, 2016, **POENARU** and a co-conspirator drilled into a Capital One Bank ATM in Lanham, Maryland, to prepare to affix an ATM Skimmer to that ATM. On or about October 14, 2016, **POENARU** and a co-conspirator placed an ATM Skimmer on the ATM located in Lanham, Maryland.

On or about October 2, 2016, **POENARU** and a co-conspirator drilled into a Capital One Bank ATM in Silver Spring, Maryland, to prepare to affix an ATM Skimmer to that ATM. On or about October 16, 2016, **POENARU** and a co-conspirator placed, and later removed, an ATM Skimmer on the ATM located in Silver Spring, Maryland.

It was further part of the conspiracy that **POENARU** and his co-conspirators used the fraudulently created debit cards and stolen PIN numbers in order to make unauthorized transactions and to fraudulently withdraw funds from a customer's bank account. On at least five dates in August and September 2017, **POENARU** and his co-conspirators used counterfeit access devices to obtain money from BB&T Bank ATMs located in Maryland.

Prior to on or about August 11, 2017, **POENARU** maintained a residence in Baltimore, Maryland. On August 11, 2017, a law enforcement officer drove by the residence, which appeared vacant and under construction. A workman who was changing the locks to the residence informed the officer that the previous tenants had been evicted. A representative of the property management company told the officer that the previous tenants no longer lived at the residence and authorized the officer to enter the residence to conduct a consent search. During the search of the residence, the officer discovered mail addressed to **POENARU** at that address and recovered the following items: (a) two gift cards, which had been re-encoded with other credit or debit card information; (b) a laptop computer and a box containing equipment, tools, and electronic parts used to manufacture skimming devices; and (c) an ATM machine bezel, which is an overlay designed to fit over parts of an ATM to disguise skimming equipment.

During and in relation to the conspiracy, **POENARU** knowingly transferred, possessed and used, without lawful authority, a means of identification of another person. Individual A's debit card was skimmed when **POENARU** installed the ATM Skimmer in Silver Spring, Maryland on or about October 16, 2016. Individual A's debit card number and associated PIN were then

used to make an unauthorized withdrawal. On or about December 5, 2016, Individual A submitted a claim to Capital One Bank in the amount of $805.50 arising from this fraudulent use.

The loss attributable to the conspiracy that **POENARU** and his co-conspirators engaged in was more than $250,000 but not more than $550,000, which was reasonably foreseeable as to **POENARU**. This loss amount includes at least $139,486.87 for amounts actually withdrawn using counterfeit access devices, including at least $77,111.00 in proceeds obtained when **POENARU** used counterfeit access devices to obtain money from BB&T Bank ATMs located in Maryland, as well as $357,500.00 in loss resulting from additional cards compromised as part of the conspiracy. As a result of the scheme, **POENARU** and his co-conspirators used unauthorized access devices and PINs to obtain funds from bank accounts held by at least 10 individual victims.

SO STIPULATED:

_____
Jessica C. Collins
Assistant United States Attorney

_____
Cristian Poenaru
Defendant

_____
Thomas J. Maronick, Jr., Esq.
Counsel for Defendant